IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BENNIE DANIELS,

          Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

          Defendant.

CIVIL ACTION FILE NO.

1:13-CV-02440-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied her disability

claim.  For the reasons set forth below, the court **ORDERS** that the Commissioner's

decision be **AFFIRMED**.

## I.       Procedural History

Plaintiff Bennie Daniels filed applications for a period of disability, disability

insurance and supplemental security income on May 7, 2010, alleging a disability

onset date of April 18, 2008. [Record ("R.") at 112-21].[1]  After Plaintiff's applications were denied initially and on reconsideration [R. at 60-63], she requested an administrative hearing which was held on February 28, 2012 [R. at 35-59].  On April 20, 2012, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications.  [R. at 21-34].  On May 22, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.   [R. at 1-6].   Having exhausted her administrative remedies, Plaintiff filed a complaint in this court on July 22, 2013, seeking judicial review of the Commissioner's final decision.  [Doc. 3].

## II.    Facts

Plaintiff Bennie Daniels was born on September 13, 1951.  On her alleged disability onset date of April 18, 2008, she was fifty-six years old, and she meets the insured status requirements of the Social Security Act through December 31, 2011. [R. at 26, 138].  Plaintiff based her applications for benefits on the following medical conditions:  high blood pressure, gout, lymphodema, diabetes, arthritis, "degenerative disc", back injury and two back surgeries, kidney problems, thyroid, deep vein thrombosis ("dvt"), and sleep apnea. [R. at 24, 112, 116, 142]. Her past relevant work

---

[1]The ALJ's decision identifies the application date as "January 11, 2010." [R. at 24].  This appears to be a scrivener's error.

AO 72A
(Rev.8/82)

included twenty-five years in customer service work with a telephone company and work as a shipping clerk.  [R. at 143, 151, 165].  Plaintiff speaks English, and she completed three years of college in March 2010 and has earned a bachelor's degree in business administration according to counsel at the hearing.  [R. at 38, 141, 149]. Plaintiff performed data entry work from early 2010 through April 2011 when she testified that she was laid off because of her inability to type fast enough and keep up with her workload.  [R. at 26, 47, 123-25].  But there have been continuous 12-month periods since her alleged onset date when she did not engage in substantial gainful activity.  [R. at 26].

The ALJ found that Plaintiff has degenerative disc disease, diabetes mellitus, hypertension, obesity, obstructive sleep apnea and history of pacemaker implantation and that these are severe impairments.  [R. at 26].  The ALJ found that Plaintiff's impairments, alone or in combination, do not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Specifically, the ALJ found that Plaintiff does not have a spinal disorder characterized by nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required by Medical Listing 1.04 and that the record does not demonstrate that Plaintiff's hypertension is

3

associated with chronic heart failure or ischemic heart disease of sufficient severity to meet or equal the requirements of Medical Listings 4.02 and 4.04. [Id.].

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work involving occasional climbing of ladders, ropes, and scaffolds and occasional stooping and crawling, that Plaintiff can perform other postural activities frequently, and that Plaintiff should avoid concentrated exposure to hazards. [R. at 26-27]. The ALJ found that Plaintiff is capable of performing her past relevant work as a customer service representative and data entry clerk as actually and generally performed and that such work does not require the performance of work-related activities precluded by the claimant's RFC. [R. at 29]. A vocational expert testified that this was consistent with the Dictionary of Occupation Titles. [R. at 58]. The ALJ found that Plaintiff was, thus, not under a disability from her alleged onset date, April 18, 2008, through the date of the ALJ's decision on April 20, 2012. [R. at 29-30].

The ALJ's decision [R. at 24-34] states the relevant facts of this case as modified herein as follows:

The claimant testified that she cannot work due to pain. She reported headaches, sleep apnea and an irregular heartbeat. The claimant stated that her high blood pressure is not controlled. She described problems with her hands and an inability to

4

type as in the past.  She testified that she can lift five pounds, sit for thirty to forty minutes, and stand for ten minutes.  She uses a cane which she testified is because her right leg swells and gives way.  Her activities of daily living include reading, watching television, and preparing a salad if seated.  And she testified that she goes to church occasionally.  [R. at 28].

A sleep study in September 2009 showed moderate obstructive sleep apnea.  But CPAP titration reduced or eliminated most of the claimant's respiratory events. (Exhibit 1E).

Medical records from Dr. Ronald Bookhart with Kaiser Permanente document treatment for the claimant's diabetes and hypertension.  In March 2010 (Exhibit 3F), the claimant reported blood sugar levels between 95-140 in the morning but also that she was not taking her insulin sensitizing medication every day as prescribed.  [R. at 232-33].  In February 2011 (Exhibit 7F), the claimant reported that she had been out of all medications for one month, and, on physical examination, her gait was balanced, she was fully upright, her sensation was normal in both feet, and her motor strength was preserved in all extremities.  [R. at 339-42].  In June 2011(Exhibit 9F), Dr. Bookhart's records indicate that the claimant's diabetes was controlled, that she had no loss of sensation in her extremities and that she denied pain and numbness in her

feet.  [R. at 453-54].  In October 2011, the claimant was seen at Grady Health System (Exhibit 12F) after losing her health insurance and reported that she had stopped taking Metformin for her diabetes because her glucose levels were well-controlled and that she was walking daily for ten minutes.  She had also achieved significant weight loss. [R. at 626].

X-rays of the claimant's lumbar spine in October 2010 showed intervertebral disc space narrowing with degenerative changes at L5-Sl.  There was mild dextroscoliosis present, and the claimant was diagnosed with lumbar radiculopathy. (Exhibit 7F).

In August 2011, the claimant was evaluated at the Piedmont Heart Institute.  Her underlying rhythm was sinus bradycardia.  She was not pacemaker dependent. Although she reported muscle spasms in the area of the device, further evaluation showed that the device was stable.  Records from Grady Hospital in October 2011 indicate arrhythmia and the need for follow up.  (Exhibits 10F, 12F).

Despite these impairments, the claimant performed sedentary work on a full time basis for over a year after applying for benefits, from early 2010 through April 2011. At the hearing in February 2012, however, the claimant testified that she was only walking to her mailbox due to back and leg pain and that she needs a cane.  [R. at 45,

54].  When asked if the cane was prescribed, she stated that she started using a cane on her own after she fell down the stairs.  [R. at 45].  Medical records consistently show that the claimant has a normal gait.  [R. at 29].

The claimant demonstrated 5/5 grip strength and intact sensation throughout in June 2011.  (Exhibit 9F).  At the hearing in February 2012, she alleged a loss of grip strength.  The claimant also testified that her high blood pressure is not fully controlled.  Records in February 2011 indicate that she was not taking her medications for one month.  (Exhibit 7F).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.    Standard of Review

An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).    The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity

7

that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that [she] is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  Under the regulations as promulgated by the Commissioner, a five step sequential procedure is

followed in order to determine whether a claimant has met the burden of proving [her] disability.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.

At step one, the claimant must prove that she is not engaged in substantial gainful activity.  See id.  The claimant must establish at step two that she is suffering from a severe impairment or combination of impairments.  See id.  At step three, the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience. See id.

"If the claimant cannot prove the existence of a listed impairment, [she] must prove at step four that [her] impairment prevents him from performing [her] past relevant work."  Doughty, 245 F.3d at 1278.  "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides [her] past relevant work."  Id.  If, at any step in the sequence, a

9

claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.    The claimant engaged in substantial gainful activity from early 2010 through April 2011. (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.    However, there have been continuous 12-month periods since the alleged onset date during which the claimant did not engage in substantial gainful activity.

4.    The claimant has the following severe impairments:  degenerative disc disease, diabetes mellitus, hypertension, obesity, obstructive sleep apnea and history of pacemaker implantation.  (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

5.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

6.    The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that she is limited to occasional climbing of ladders, ropes, and scaffolds.  She can stoop and crouch occasionally and perform other postural activities frequently.  The claimant should avoid concentrated exposure to hazards.

10

7.   The claimant is capable of performing past relevant work as a customer service representative and data entry clerk. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity. (20 C.F.R. §§ 404.1565 and 416.965).

8.   The claimant has not been under a disability, as defined in the Social Security Act, from April 18, 2008, through the date of this decision. (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

[R. at 24-34].

## V.   Discussion

At the first step of the sequential evaluation, the ALJ found that Plaintiff Bennie Daniels meets the insured status requirements of the Social Security Act through December 31, 2011, and that, although Plaintiff engaged in substantial gainful activity from early 2010 through April 2011, there have been continuous twelve-month periods since April 18, 2008, her alleged onset date, during which Plaintiff did not engage in substantial gainful activity. [R. at 26]. At the second step, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, diabetes mellitus, hypertension, obesity, obstructive sleep apnea and history of pacemaker implantation. [Id. at 26-27]. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 27].

11

At the fourth step, the ALJ found that Plaintiff Daniels has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that Plaintiff is limited to occasional climbing of ladders, ropes, and scaffolds and occasional stooping and crouching, that she can perform other postural activities frequently, and that she should avoid concentrated exposure to hazards.  [R. at 27-29].  The ALJ found that Plaintiff is capable of performing her past relevant work as a customer service representative and data entry clerk and that such work does not require the performance of work related activities precluded by Plaintiff's RFC.  The ALJ therefore determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 18, 2008, through the date of the ALJ's decision, April 20, 2012.  [R. at 29].

Plaintiff Daniels contends that the ALJ's decision should be reversed.  [Doc. 12].  Plaintiff argues that the ALJ committed reversible error when he failed to address the opinion of LaQuay Jones, a certified nurse practitioner ("CNP"), who treated Plaintiff at Kaiser Permanente in 2006.  [Id. at 1, 5-8].  Plaintiff contends that the ALJ also committed reversible error by failing to consider Plaintiff's degenerative joint disease of the left knee and carpal tunnel syndrome.  [Id. at 8-13].  And Plaintiff argues that the Commissioner's decision should be reversed because the ALJ failed to

12

properly apply the three-part pain standard established by the Eleventh Circuit to Plaintiff's complaints of pain.  [Id. at 13-18].  The Commissioner contends that the ALJ applied the proper legal standards and that substantial evidence supports the ALJ's decision. [Doc. 15].  Plaintiff has not replied to the Commissioner's arguments.

### A.   Certified Nurse Practitioner's Treating Opinion

In July 2006, about two years before Plaintiff's alleged onset of disability, Plaintiff was seen at Kaiser Permanente for an annual check-up which was performed by LaQuay Jones, CNP.  (Exhibit 7F).  The CNP noted that Plaintiff, at age fifty-four, was five feet four inches tall and weighed two-hundred-and-fifty-two pounds, that her blood pressure was 140/90, and that Plaintiff's non-fasting blood sugar was 141.  [R. at 412].  The CNP's assessment was obesity, hypothyroidism (acquired), hypertension, and type 2 diabetes (controlled), and the CNP recommended that Plaintiff attempt to lose weight, reduce her salt intake, improve her dietary compliance, reduce exposure to stress and attend health education classes for weight control, smoking cessation, diabetes, exercise and stress reduction.  [R. at 412-13].  The ALJ did not discuss the CNP's notes or assessment.  [R. at 24-34].

Plaintiff contends that the ALJ committed reversible error when he failed to address the CNP's statement that Plaintiff should attempt to reduce her exposure to

13

stress.  Plaintiff argues that limitations on her ability to handle stress "could potentially take [her] out of performing her past relevant work" and that, given the ALJ's RFC assessment and Plaintiff's age (sixty) at the time of the hearing, she would be found disabled at step five pursuant to the Medical-Vocational Guidelines under Grid Rule 201.06.  [Doc. 12 at 6].

In support of her argument, Plaintiff cites several cases; however, because the cases cited by Plaintiff address an ALJ's failure to discuss treatment notes or the opinion of a treating physician, the cases do not support Plaintiff's argument regarding the CNP.  [See Doc. 12 at 6-7, citing, e.g., Lawton v. Comm'r of Social Sec., 431 Fed. Appx. 830, 833-34 (11th Cir. 2011) (reversible error where ALJ failed to consider opinion evidence from two treating physicians); Wiggins v. Schweiker, 679 F.2d 1387, 1390 (11th Cir. 1982) (reversible error because ALJ failed to address treating physician's second report); Robin v. Massanari, 176 F.Supp.2d 1278, 1281 (S.D. Ala. 2001) (ALJ committed reversible error by failing to address treating physician's notes and RFC opinion)].  A treating physician is an acceptable medical source as defined by the Social Security regulations.  See 20 C.F.R. §§ 404.1513(a), 416.913(a).  "[O]nly 'acceptable medical sources' can give [ ] medical opinions. . . . [And o]nly 'acceptable medical sources' can be considered treating sources . . .  whose opinions may be

14

entitled to controlling weight."  Social Security Ruling ("SSR") 06-03P, at *2 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2), 404.1502, 416.902).   CNPs are not acceptable medical sources.  CNP's are considered "'other sources,' as defined in 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1))," and they "cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an 'acceptable medical source' for this purpose."  SSR 06-03P, at *2.

An ALJ "may use" other sources to show the severity of an impairment and how the impairment affects the claimant's ability to function.  SSR 06-03P, at *2.  In doing so, the ALJ must evaluate the other source pursuant to regulations which provide, *inter alia,* that, generally, more weight is given to a treating source's opinion "the longer the treating source has treated you."  Id.[2]  The CNP who examined Plaintiff in January

---

[2]The regulations state in pertinent part:

(2)   Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . .

(i)   Generally, the longer a treating source has treated you . . . the more weight we will give to the source's medical opinion. . . .

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

15

2006 saw Plaintiff only one more time, six months later, in July 2006. [R. at 412-14]. And the CNP's notes are inconsistent with the remainder of the record which does not reflect any evidence from an acceptable medical source documenting or opining that Plaintiff has a reduced ability to handle stress. For these reasons and authority, the court finds that the ALJ did not commit reversible error when he did not discuss the CNP's assessment or recommendations.

## B.    Other Impairments

Plaintiff's second argument is that the ALJ committed reversible error by failing to consider the degenerative joint disease in her left knee and her carpal tunnel syndrome and to include appropriate limitations in her RFC and in the questions to a vocational expert ("VE") based on those impairments. [Doc. 12 at 8-9]. "Where a claimant has alleged several impairments, the Secretary has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." Jones v. Dept. of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (citation omitted); see also SSR 96-8p. Plaintiff argues that the degenerative joint disease of her left knee and the limitations caused by this impairment greatly impact her ability to walk and cause her to have to change position in order to alleviate pain and that the ALJ therefore should have included limitations

16

on her ability to walk and her need to change positions during the workday.  [Doc. 12 at 9].  And Plaintiff contends that she has carpal tunnel syndrome and hand limitations and that the ALJ erred by not including RFC limitations on Plaintiff's ability to use her hands during the workday.  [Id. at 10, citing R. at 27].

The regulations require the ALJ to "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in the case."  Phillips, 357 F.3d at 1238 (quoting 20 C.F.R. § 404.1520(e)) (internal quotation marks omitted).  "The residual function capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments. . . .  Along with [her] age, education and work experience, the claimant's [RFC] is considered in determining whether the claimant can work."  Lewis, 125 F.3d at 1440 (citations omitted).

When Plaintiff filed applications for benefits, she did not include degenerative joint disease in the left knee or carpal tunnel syndrome in her alleged impairments.  [R. at 142].  But Plaintiff points out that, at the hearing, counsel asserted that Plaintiff's disability was related in part to knee pain and that Plaintiff testified to problems with her legs and pain in her knee and that her legs sometimes go out on her.  [Doc. 12 at 8-9, citing R. at 38-39 and 43-44].  And Plaintiff cites the following medical evidence

17

regarding her left knee.  Plaintiff twisted her left knee going down the stairs in October 2008, and x-rays showed degenerative changes with mild joint space narrowing of the medial aspect of the knee joint, hypertrophic change along the distal femoral condylar regions with separate osseous density thought to be due to a benign hypertrophic bone formation, and suspected synovial osteochondroma posterior to the knee joint abutting the distal femoral region.  [Id. at 8, citing R. at 216-19].  An MRI of the left knee in November 2008 confirmed the presence of the degenerative joint disease as well as a lateral meniscus tear and medial collateral ligament sprain.  [Id., citing R. at 439].  And on June 18, 2009, Dr. Shore noted that Plaintiff complained of some arthritis of the knees.  [Id., citing R. at 323].

Although the records show that Plaintiff has degenerative joint disease in the left knee as she argues, when Dr. William M. Craven, an orthopedist with Alliance Orthopaedics and Sports Medicine, examined Plaintiff in November 2008 following the MRI, he did not indicate that this impairment prevented her from working.  Dr. Craven stated that he was going to schedule Plaintiff for surgery[3] but that Plaintiff could return to sedentary work restricted to "sitting most of the time, may involve

---

[3]The record does not indicate whether the recommendation for surgery was based on the lateral meniscus tear in October 2008 or on degenerative joint disease.

18

walking or standing 1/3 of the time." [R. at 440].  There is no record evidence of Plaintiff having surgery.  And Plaintiff has not cited nor has the court found any record evidence of continued treatment for or continued complaints specifically concerning Plaintiff's left knee after Dr. Craven's November 2008 record.

Although Dr. Shore, a nephrologist who evaluated Plaintiff for proteinuria in June 2009 noted at that time that Plaintiff reported having "'some arthritis'" in her knees [R. at 323], Plaintiff has not cited any record evidence documenting a diagnosis of arthritis in the knees.  And, even if the record reflected a diagnosis of arthritis in the knees, which is not the case here, "the mere existence of [such an] impairment[ would] not reveal the extent to which [it] limit[s] her ability to work or undermine the ALJ's determination in that regard." Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) (in which the court held that the "'severity of a medically ascertained disability must be measured in terms of its effect upon ability to work'")).

While Plaintiff testified that she started using a cane after she fell down the stairs in October 2008, the ALJ noted that Plaintiff also testified that she uses a cane because her right leg swells and gives way.  [R. at 28, 45 ("my right leg gives me the most trouble")].  Plaintiff did not specifically complain of left knee problems during the

19

hearing.  [R. at 35-58].  And the record supports the ALJ's finding that the medical records consistently show that Plaintiff has a normal gait.

Plaintiff did not complain of continued left knee pain or left knee problems on May 1, 2009, six or seven months after falling down the stairs, and, on examination, her gait was balanced, she was fully upright, and her strength was preserved and symmetric in all extremities.  [R. at 366-70].  Plaintiff also did not complain of left knee pain on June 3, 2009, and, when she was examined on July 27, 2009, and October 12, 2009, there was no finding of a left knee problem or of limitations caused by Plaintiff's left knee.  [R. at 359, 362, 364].  Plaintiff's gait was balanced, she was fully upright and she reported no problems with walking on March 2, 2010, as noted in a Physical Residual Functional Capacity Assessment completed by State Agency physician Dr. Shakoora Omonuwa on December 16, 2010, based on the medical evidence of record.  [R. at 337].  Three months later, on May 4, 2010, Plaintiff complained of low back pain with bending or lifting with radiation down the right leg, but she did not complain of arthritis in her knees or of left knee problems nor was arthritis or a problem with her left knee noted on physical examination.  [R. at 344-46].  And, in February 2011, Plaintiff "denie[d] any symptoms of joint pain, swelling, myalgias, gait disturbance or back pain."  [R. at 341].  Thus, substantial evidence

supports the ALJ's finding that Plaintiff has a normal gait, and Plaintiff has not shown that the ALJ failed to apply the proper standards to the medical evidence of degenerative joint disease in her left knee.

Regarding Plaintiff's allegations of carpal tunnel syndrome and hand limitations, the only medical records that Plaintiff cites are the CNP's notes in January 2006 of a positive phalen sign and a positive tinel sign on the left indicating that Plaintiff had carpal tunnel syndrome for which Plaintiff was to wear a brace day and night.  [Doc. 12 at 10, citing R. at 413-14].  As discussed earlier, a CNP "cannot establish the existence of a medically determinable impairment" and cannot render a medical opinion.  SSR 06-03P, at *2.  The cases cited by Plaintiff are inapposite because they address medical records and diagnoses by treating physicians, that is, by acceptable medical sources.  See, e.g., Ashford v. Barnhart, 347 F. Supp. 2d 1189, 1197-98 (M.D. Ala. 2004) (recommendation to reverse and remand because ALJ failed to analyze or mention parts of treating physician's opinion); Williams v. Barnhart, 186 F.Supp.2d 1192 (M.D. Ala. 2002) (recommendation to reverse and remand because ALJ failed to address some impairments clearly identified by treating physicians).  And Plaintiff has not cited an acceptable medical source diagnosing either carpal tunnel syndrome or hand limitations for any reason.

21

Plaintiff cites her testimony when questioned at the hearing as to why she could not do the job of data entry clerk which she performed from early 2010 through April 2011. [Doc. 12 at 10]. Plaintiff responded, "Because I have hand problems with my hands. I guess, it's arthritis, because I can't type like I used to." [Id., citing R. at 46]. However, Plaintiff has not cited an acceptable medical source diagnosing arthritis in her hands. And the mere existence of such a diagnosis would not be sufficient to show functional limitations that the ALJ should have discussed. Moore, 405 F.3d at 1213 n.6 (citation omitted).

Further, the ALJ addressed Plaintiff's allegations of hand problems and an inability to type as in the past when he noted that "despite her impairments, [Plaintiff] performed sedentary work on a full time basis for over a year since filing her application for benefits." [R. at 28]. The ALJ, citing a June 2011 record two months after Plaintiff stopped performing data entry work which indicated that Plaintiff had 5/5 strength and intact sensation throughout, stated that he found "no support for lack of grip strength as alleged during the hearing." [R. at 29]. The June 2011 exam notes state that Plaintiff "denie[d] symptoms of joint pain, swelling . . . Motor strength is preserved and symmetric in all extremities. No sensory deficits noted." [See R. at 464]. For these reasons, the court finds that Plaintiff has not cited substantial

acceptable medical record evidence to support her argument nor has Plaintiff shown that the ALJ failed to apply the proper standards when he did not include hand limitations in Plaintiff's RFC or in the questions to the VE.  See Davis-Grimplin v. Comm'r, Social Sec. Admin., 556 Fed. Appx. 858, 863 (11th Cir. 2014) (holding that ALJ did not err by not including hand limitations in the RFC where the evidence did not show that claimant had such limitations even though her bilateral carpal tunnel syndrome was a severe impairment).

### C.    Proper Application of the Pain Standard

Plaintiff's final argument is that the Commissioner's decision should be reversed because the ALJ failed to apply the proper standard and failed to articulate any valid reason to discredit her testimony.  When a claimant seeks to establish disability through subjective testimony of her pain or other symptoms, a three (3) part "pain standard" established by the Eleventh Circuit applies.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged [symptoms] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain" or other alleged symptom.  Id.  See also 20 C.F.R. §§

23

404.1529, 416.929.  If the pain standard is met and the claimant's testimony, if credited, could support the claimant's disability, the ALJ must make and explain a finding concerning the credibility of the claimant's testimony.  <u>See</u> <u>Viehman v. Schweiker</u>, 679 F.2d 223, 227-28 (11th Cir. 1982).

The relevant Social Security regulations provide that the factors to be considered by the ALJ in evaluating a claimant's subjective symptoms include: daily activities; location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate her symptoms; treatment received and measures used, other than medication, for the relief of symptoms; and any other factors concerning the functional limitations and restrictions due to the claimant's symptoms.  <u>See</u> 20 C.F.R. §§ 404.1529, 416.929; <u>see also</u> SSR 96-7p.  "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so."  <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1054 (11th Cir. 1986)).

24

The ALJ found that, while one could reasonably expect Plaintiff's medically determinable impairments to cause her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of her alleged symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment.  [R. at 28].  In support of her argument that the ALJ did not properly consider her pain testimony in making that finding, Plaintiff cites the following medical records:  her complaints of left arm pain in 2006 to the CNP; her fall in October 2008 resulting in a recommendation to have surgery on her left knee; her complaints of headaches, leg cramps at night and arthritis in the knees when she was examined by a nephrologist in June 2009; and her May 2010 complaints of low back pain with bending or lifting with radiation down the right leg.  [Doc 12 at 16-17, citing R. at 216-18, 227-28, 253-54, 322-24, 413-14, 418-22, 438-40, 451].  The medical records cited by Plaintiff are the same records discussed earlier concerning the degenerative joint disease in her left knee and the CNP's 2006 assessment of carpal tunnel syndrome, which, as discussed earlier, do not support her arguments concerning carpal tunnel syndrome or arthritis resulting in hand limitations or that the ALJ should have included RFC limitations based on degenerative joint disease in the left knee.

The ALJ took Plaintiff's activities into consideration when he noted that Plaintiff's impairments did not prevent her from performing sedentary, data entry work on a full time basis from January 2010 through April 2011. The ALJ found that, although Plaintiff testified in February 2012 that she could only walk to the mail box due to back and leg pain, she had reported in October 2011 that she walked ten minutes a day. [R. at 28-29, 53, 626].[4] Plaintiff testified that she uses a cane on her own – that the cane was not prescribed. [R. at 29, 45]. And the ALJ found that, according to the medical records, Plaintiff consistently has a normal gait [R. at 29] which, as discussed earlier, is supported by substantial medical evidence. The ALJ also found that, while Plaintiff alleged a loss of grip strength at the hearing, she had demonstrated 5/5 grip strength and intact sensation throughout in June 2011. (Exhibit 9F). On appeal, Plaintiff has not cited acceptable medical source evidence documenting a loss of grip strength either before or after she stopped doing data entry work. And, the ALJ noted that, although Plaintiff testified that her high blood pressure is not fully controlled, her

---

[4]Despite Plaintiff's allegations of such back and leg pain, the court notes that, while Plaintiff testified that she is unable to take pain medication because she is on Coumadin and must therefore take Tylenol, she nonetheless testified that she does not wish to have back surgery. [R. at 42-43].

26

medical records in February 2011 (Exhibit 7F) indicate that she had not taken her medications for one month.  [R. at 29].

"We do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole." Castel v. Comm'r of Soc. Security, 355 Fed. Appx. 260, 263 (11th Cir. 2009) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)).  "[C]redibility determinations are the province of the ALJ." Moore, 405 F.3d at 1212 (citing Wilson v. Heckler, 734 F.2d 513, 417 (11th Cir. 1984)).  The ALJ clearly articulated reasons, which are supported by substantial evidence, for finding that Plaintiff's statements were credible only to the extent of the ALJ's RFC assessment.  And the medical records cited by Plaintiff are not sufficient reason to disturb the ALJ's credibility determination.

## VI.    Conclusion

For the forgoing reasons and cited authority, the undersigned concludes that the ALJ applied proper legal standards in reaching his decision and that it was supported by substantial evidence.  See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  It is, therefore, **ORDERED** that the decision of the Commissioner be **AFFIRMED**.  See Melkonyan v. Sullivan, 111 S. Ct. 2157 (1991).

**SO ORDERED THIS** 3rd day of March, 2015.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

28